

# In the Missouri Court of Appeals
# Eastern District

DIVISION THREE

| | | |
|---|---|---|
| STACEY L. BOYD, | ) | No. ED111479 |
| | ) | |
| Appellant, | ) | Appeal from the Labor and |
| | ) | Industrial Relations Commission |
| v. | ) | |
| | ) | Claim Nos: 2243587, 2243589, and |
| | ) | 2243591 |
| DIVISION OF EMPLOYMENT | ) | |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | Filed: March 26, 2024 |

## Introduction

Stacey L. Boyd (Claimant) appeals from the decisions of the Labor and Industrial Relations Commission (Commission) finding Claimant did not timely file appeals to the Appeals Tribunal of the Division of Employment Security (Appeals Tribunal), following three Unemployment Overpayment and Penalty Determinations. We reverse and remand for further proceedings.

## Factual and Procedural Background

Claimant worked as a waitress at Joey B's restaurant until it closed for an extended time in 2020 during the COVID-19 pandemic. She submitted a claim for and received unemployment benefits in 2020. She used a UInteract[1] email account to claim her unemployment benefits online.

---

[1] "UInteract" is the Division of Employment Security's online website through which individual claimants have their own accounts. See Sanders v. Div. of Employment Sec., 660 S.W.3d 35, 37 (Mo. App. W.D. 2023).

On July 11, 2022,[2] deputies for the Division of Employment Security (the Division) made three separate determinations that in 2020 Claimant received overpayments due to fraud, in that she willfully failed to report earnings that, if reported, would have disqualified her from receiving unemployment benefits. Specifically, the Division determined Claimant received unemployment benefits on weeks during which (1) she had worked and earned wages that she willfully did not report, and (2) she had also received federal pandemic unemployment compensation (FPUC) or lost wages assistance (LWA) benefits that she willfully failed to report.

In all three cases, each overpayment determination in the record indicated it was mailed on July 11, 2022, and each stated that Claimant had until August 10, 2022 to appeal the overpayment determination. Claimant did not appeal from any of the three overpayment determinations by August 10, 2022, and they became final decisions. On October 20, 2022, the Division mailed, via the United States Postal Service, Claimant three notices of orders of assessment based on each of the three final overpayment determinations. Each of the notices of assessments included language stating that "[t]his assessment will become final unless you file a petition for reassessment with the Division by 11/21/2022."

On October 25, 2022, Claimant filed an appeal of all three overpayment determinations, challenging the Division's findings of fraud. In her appeal, she stated she had received notice of the Division's overpayment determinations for the first time on October 25, 2022. She acknowledged she spoke with an employee of the Division on October 25, 2022 who informed Claimant the Division had sent notices of the three overpayment determinations by email to her UInteract account; however, Claimant asserted that after her unemployment benefits stopped she

_____

[2] We note that in each of the Appeals Tribunal orders, it stated the Division's overpayment determinations were mailed to Claimant on July 8, 2022. This appears to be a typographical error, as the overpayment determinations state that they were mailed on July 11, 2022. Thus, we use the July 11, 2022 date throughout this Opinion to avoid confusion.

2

had no reason to check her UInteract email account, and thus she was unaware of the Division's overpayment determinations until she received the orders of assessment on October 25, 2022.

On November 1, 2022, the Appeals Tribunal dismissed Claimant's appeals from the three overpayment determinations as untimely. The Appeals Tribunal stated it had reviewed the Division's records, which showed the deputy's overpayment determinations were mailed to Claimant on July 11, 2022, but that she did not file her appeals until October 25, 2022, which was outside the 30-day statutory time limit to file appeals for overpayment determinations, and thus the three July 11, 2022 overpayment determinations were final. Claimant appealed each of the Appeals Tribunal's orders to the Commission. In her appeals, she asserted that "the first and only time [she] was notified about this matter was by mail on October 25, 2022, via the US Postal service," and, moreover, that in those notifications, the Division had informed her that her appeal from each of the assessments was due November 21, 2022. On January 30, 2023, the Commission issued its decisions in Appeal Nos. 2243587, 2243589, and 2243591, affirming the orders of the Appeals Tribunal that dismissed Claimant's appeals from the overpayment determinations as untimely. The Commission's decisions stated its review of the Division's records showed the Division mailed the overpayment determinations on July 11, 2022 but Claimant did not file her appeals within 30 days.

While this appeal was pending, Claimant filed a motion to supplement the record on appeal, specifically requesting that the Commission supply the parties and this Court with copies of the July 11, 2022 emails and the October 20, 2022 letters it sent to Claimant. This Court granted Claimant's request and directed the Commission to file a supplemental record and to provide Claimant with the July 11, 2022 emails and the October 20, 2022 letters. The Commission

3

supplemented the record with the October 20, 2022 letters, but it did not provide the July 11, 2022 emails, although it referenced the substance of the emails in its brief.

## Standard of Review

Section 288.210[3] governs appellate review of the Commission's decisions in unemployment compensation cases. Hergins v. Div. of Employment Sec., 372 S.W.3d 543, 545 (Mo. App. W.D. 2021). On review, an appellate court may modify, reverse, remand for rehearing, or set aside the Commission's decision only if it finds that: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the decision is not supported by the facts; or (4) the decision is not supported by sufficient competent evidence in the record. Section 288.210. This Court is not bound by the Commission's legal conclusions or application of law, which we review *de novo*, but we defer to the Commission's factual findings, so long as they are supported by competent and substantial evidence in the record. Koenen v. BRG Liberty, LLC, 647 S.W.3d 47, 51 (Mo. App. E.D. 2022). Whether competent and substantial evidence supports the Commission's factual findings requires us to examine the evidence in the context of the whole record. Miller v. Div. of Employment Sec., 670 S.W.3d 444, 449 (Mo. App. E.D. 2023).

## Discussion

In her sole point on appeal, Claimant argues the Commission erred in affirming the Appeals Tribunal's orders dismissing her appeals from the three overpayment determinations as untimely because the Commission was equitably estopped from denying her appeal, in that there was no evidence in the record the Division gave Claimant notice of the overpayment determinations before October 25, 2022, and the notices of assessment provided an appeal deadline of November 21, 2022. We agree that the Commission's decisions were not supported by competent and substantial

_____

[3] All statutory references are to RSMo. supp. 2022, unless otherwise indicated.

4

evidence in the record, requiring reversal and remand. Claimant's specific arguments on appeal regarding equitable estoppel are moot and we do not address them.

Rule 100[4] addresses judicial review of administrative decisions. Rule 100.02 provides that the record "shall be prepared and certified by the commission as being true, accurate, and complete." Rule 100.02(f). A court of appeals cannot reach or decide the merits of a claim on appeal where the documents that the party relies upon to support its claims are not part of the record. See Rowe v. Southeast Mo. Residential Servs., 599 S.W.3d 924, 925-26 (Mo. App. S.D. 2020). "The only record we may consider is the record certified by the Commission as containing all documents and papers on file in the matter, together with a transcript of the evidence, the findings and award." Id. at 926 (citation omitted).

When the Division discovers facts indicating that an individual obtained unemployment benefits by fraud, a deputy shall make a written determination as to whether fraud occurred and whether the individual must repay the benefits with a 25% penalty. Section 288.380.9(1). Once the Division delivers or mails its overpayment determination to the individual, the individual has 30 days from the date of mailing to file an appeal before the determination becomes final. Section 288.380.9(2); see also 8 C.S.R. 10-5.010(5)(B) (2018) (appeal from determination of overpayment and penalty due to fraud shall be filed within 30 days from date determination was mailed); Sanders v. Div. of Employment Sec., 660 S.W.3d 35, 42 (Mo. App. W.D. 2023) (statutory procedures outlined for appeal in unemployment security cases, including 30-day time limit to file appeal, are mandatory).[5] Although the statute states the notice must be mailed, Section 288.247.1 clarifies

---

[4] All rule references are to Mo. R. Civ. P. 2023, unless otherwise indicated.
[5] While "good cause" can excuse an untimely appeal in some circumstances, the "good cause" exception cannot be used to excuse an untimely appeal from a determination of overpayment for fraud under Section 288.380. See Kline v. Div. Employment Sec., 662 S.W.3d 158, 162 (Mo. App. E.D. 2023); Ireland v. Div. of Employment Sec., 390 S.W.3d 895, 899 n.4 (Mo. App. W.D. 2013).

5

that the Division may mail the notice by email, unless the claimant has requested an alternate method of delivery. Section 288.247.1 ("any notice, determination, decision, or other paper required to be mailed by the division to … [a] claimant under this chapter may be transmitted solely by electronic means to any … claimant, unless an alternate method of transmittal is requested by the … claimant"). The date the division transmits via email any notice, determination, or decision "shall be the date of mailing or notification." Id.

Here, the Division made a determination in each of Claimant's three cases that in 2020 Claimant received overpayments due to fraud, and the copies of the overpayment determinations in the record indicate the Division mailed the determinations on July 11, 2022. Claimant's appeals from the determinations were due on August 10, 2022, but she did not file her appeals until October 25, 2022. The Appeals Tribunal dismissed her appeals as untimely, finding that the Division mailed the determinations to Claimant on July 11, 2022. The Commission affirmed the Appeals Tribunal's dismissals on the same basis after independent review of the Division's records. Despite the Appeals Tribunal's and the Commission's references to the Division's records, the record on appeal before this Court did not include the documents that either the Appeals Tribunal or the Commission relied on in making their decisions. Specifically, the record on appeal does not include copies of the alleged July 11, 2022 emails notifying Claimant of the Division's overpayment determinations. Claimant requested the Commission supplement the record with these emails, and this Court so directed the Commission, but the Commission failed to supplement the record with the July 11, 2022 emails.

To support the Commission's finding that Claimant's appeal of the overpayment determinations was untimely, the record as a whole must include competent and substantial evidence that Claimant filed her appeals more than 30 days after the Division mailed her the

overpayment determinations. See Koenen, 647 S.W.3d at 51. Claimant filed her appeals on October 25, 2022, so the record must include evidence that the Division mailed Claimant its overpayment determinations more than 30 days before this date, i.e., on or before September 24, 2022. See Sanders, 660 S.W.3d at 43 (noting that without evidence of mailing, such as envelope or certified mail receipt, there was "little evidence in the record supporting that the Division mailed the ineligibility or overpayment determinations"). While the Division's overpayment determinations here list the "Date Mailed" as July 11, 2022, this date is not self-proving but requires supporting documentation. See id. ("listing the 'Date Determination Mailed' does not mean the determination was, in fact, sent"). We defer to the Commission's factual findings only when they are supported by competent and substantial evidence in the record. See Koenen, 647 S.W.3d at 51. Without copies of the purported July 11, 2022 emails, or an affidavit certifying the emails were sent on July 11, 2022, not only does the record on appeal here not include competent and substantial evidence supporting the Commission's factual findings, but it creates a presumption that the missing evidence is unfavorable to the Commission. See Dash v. Mitchell, 663 S.W.3d 859, 866 (Mo. App. E.D. 2023) (when evidence is not included in appellate record, we presume it would have been unfavorable to party with burden to provide it).

While Claimant admits that, when she checked her UInteract email account, she realized the Division had sent her notice of the overpayment determinations; however, she argues that, even with this admission, the record is devoid of proof that the Division sent the email notifications on July 11, 2022, rather than some other unknown date. We agree. Rule 100.02 places the burden on the Commission to prepare and certify the record as true, accurate, and complete. Rule 100.02(f). The timing of when the Division mailed its overpayment determinations to Claimant is essential to the Commission's determinations that her appeals were untimely, and the Commission

7

has not supplied this Court with the documents necessary to support its findings with competent and substantial evidence.

The more difficult question is what happens now. During oral arguments, counsel for the Commission requested this Court to remand this case to allow the Commission the opportunity to supplement the record with the July 11, 2022 emails. However, the error here runs deeper than simply failing to produce documents for the record on appeal. Rather, Section 288.190.2 requires the Appeals Tribunal to include in the record and to consider as evidence all records of the Division that are material to the issues. The Appeals Tribunal did not include in the record the basis for its decisions that Claimant's appeals were untimely. Without a record of supporting evidence, neither the Commission nor the Appeals Tribunal could have rendered a decision that was authorized by law. See Section 288.190.2; Gidley v. Indus. Comm'n, 356 S.W.2d 550, 554 (Mo. App. 1962). The Commission's decisions upholding the Appeals Tribunal's conclusions that Claimant's appeals were untimely were in error because the Commission failed to produce evidence sufficient to establish that Claimant did not file her appeals within 30 days of the Division having mailed her the overpayment determinations. Having concluded there was insufficient evidence that Claimant filed her appeals from the Division's overpayment decisions out of time, we reverse the decision of the Commission, and we remand for the Appeals Tribunal to decide Claimant's appeals on the merits.

Point granted.

Conclusion

For the foregoing reasons, we reverse the decisions of the Commission because they were not supported by sufficient competent evidence in the record on appeal, and we remand for the

Appeals Tribunal to decide Claimant's appeals from the overpayment determinations on the merits.

_____
Gary M. Gaertner, Jr., J.

Lisa P. Page, P.J., and
Angela T. Quigless, J., concur.